IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

**Rochelle Dean,**
on behalf of Elijah R. Dean,

　　　　Plaintiff,

v.

**MICHAEL J. ASTRUE,**
Commissioner of Social
Security,

　　　　Defendant.

**No. 11-CV-4027-DEO**

**MEMORANDUM AND OPINION ORDER**

_____

## I.   INTRODUCTION AND BACKGROUND

This matter is before the Court pursuant to Rochelle Dean (Plaintiff's) appeal from a final decision of the Commissioner of Social Security (Commissioner).   Plaintiff seeks supplemental security income (SSI) disability benefits under Title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 1381 _et. seq_, on behalf of her minor son, Elijah Dean.   Docket No. 4.   This Court has authority to review the final decision of the Commissioner pursuant to 42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g).

Plaintiff filed for SSI benefits on behalf of her son on February 2, 2007.   Tr. 323.   On October 21, 2009, an administrative law judge (ALJ) issued a decision denying Plaintiff's request.   Tr. 33.   On January 14, 2009, the

Appeals Council then denied Plaintiff's request for review of the ALJ's decision.  On March 18, 2011, Plaintiff timely filed her complaint with this Court.   Docket No. 3.   Since SSI disability benefits are only payable from the month following the date of the claim, this Court must determine whether Plaintiff's son was disabled between February of 2007, to the time of the ALJ's decision, October 21, 2009.   20 C.F.R. 416.335.

## II.  FACTS

Elijah R. Dean (Elijah), Plaintiff's son, was born on June 26, 2001.  Tr. 53.  At the time his mother filed for SSI benefits, he was 5 years old.  At the time the ALJ issued his decision denying him benefits, he was 8 years old.

Elijah was born to a complicated birth and presented with a flaccid right arm.  Tr. 148.  At three weeks, Elijah exhibited no right elbow flexion,[1] wrist extension or

---

[1] Flexion is the "act of bending a joint or limb in the body . . . ."  *flexion*, The Free Dictionary, http://www.thefreedictionary .com/flexion, last visited March 20, 2012.

supination,[2] tricep and bicep reflex, or deltoid[3] function, though he did exhibit some flexion of his right thumb, fingers, and wrist.   Tr. 148 and 152.   Dr. Rundquist determined Elijah suffered from a "right brachial plexus[4] birth palsy."[5]   Id.

At just over two months, Elijah again exhibited some finger and thumb flexion.   Tr. 152.   On December 6, 2001, "Elijah underwent supraclavicular[6] exploration of his right

---

[2] To supinate is to "turn or rotate (the hand or forearm) so that the palm faces up or forward." *supinate*, The Free Dictionary, http://www.thefreedictionary.com/supinate, last visited March 20, 2012.

[3] A deltoid is a "thick triangular muscle covering the shoulder joint, used to raise the arm from the side." *deltoid*, The Free Online Dictionary, http://www.thefree dictionary.com/deltoid, last visited March 20, 2012.

[4] A plexus is "a network or tangle, chiefly of vessels or nerves."   A brachial plexus is "a nerve plexus originating from the anterior branches of the last four cervical and the first thoracic spinal nerves, giving off many of the principal nerves of the shoulder, chest, and arms." *brachial plexus*, The Free Dictionary, http://medial-dictionary.thefree dictionary.com/brachial+plexus, last visited March 20, 2012.

[5] Palsy refers to "[c]omplete or partial muscle paralysis . . . ." *Palsy*, The Free Dictionary, http://www.thefree dictionary.com/palsy, last visited March 20, 2012.

[6] Superclavacular pertains "to the area above the clavicle, or collar bone." *supraclavicular*, The Free Dictionary, http://medial-dictionary.thefreedictionary.com/ supraclavicular, last visited March 20, 2012.

brachial plexus with neurolysis[7] of his start of neuroma[8] in his upper trunk." Tr. 163.  He also "had sural[9] nerve cable grafts[10] which were placed from C5 proximal root to C5 and 6 distal roots as well as the suprascapular."  Id.  A six month check-up indicated "gradual" improvement, but a loss of "passive external rotation of the shoulder."  Tr. 211 and 213.

On May 20, 2003, Elijah, under sedation, underwent an electroneuromyorgraphy[11] test, which demonstrated "evidence of a severe remote neurogenic injury of right C5, C6, and C7

_____

[7] Neurolysis is the "release of a nerve sheath by cutting it longitudinally." *neurolysis*, The Free Dictionary, http://medical-dictionary.thefreedictionary.com/neurolysis, last visited March 20, 2012.

[8] A neuroma is "a tumor growing from a nerve or made up largely of nerve cells and nerve fibers." *neuroma*, The Free Dictionary, http://medical-dictionary.thefreedictionary.com/neuroma, last visited March 20, 2012.

[9] Sural refers to the anatomy of or relates "to the calf of the leg." *sural*, The Free Dictionary, http://www.thefreedictionary.com/sural, last visited March 20, 2012.

[10] To graft is to "transplant . . . (living tissue, for example) surgically into a bodily part to replace a damaged part or compensate for a defect." *graft*, The Free Dictionary, http://www.thefreedictionary.com/graft, last visited March 20, 2012.

[11] In an electroneuromyography test, "the peripheral nerves to the muscle under study are stimulated with electric current." *electroneuromyography*, The Free Dictionary, http://medical-dictionary.thefreedictionary.com/electroneuromyography, last visited March 20, 2012.

supplied muscles."  Tr. 217-18.

On March 5, 2004, Elijah underwent another surgery:  "an . . . exploration of the brachial plexus with axillary[12] musculocutaneous[13] neurolysis and transfer of the latissimus dorsi[14] to the teres minor[15] along with a subscapularis release."[16]  Tr. 399.  After the surgery, Elijah continued to

---

[12] Axillary relates to or deals with an area near the armpit.  *axillary*, The Free Dictionary, http://www.thefree dictionary.com/, last visited March 20, 2012.

[13] Musculocutaneous is "of, relating to, supplying, or consisting of both muscle and skin."  *musculocutaneous*, Merriam-Webster, http://www.merriam-webster.com/medical/musc ulocutaneous, last visited March 20, 2012.

[14] The latissimus dorsi is "one of a pair of large triangular muscles on the thoracic and lumbar areas of the back."  *latissimus dorsi*, The Free Dictionary, http://medical -dictionary.thefreedictionary.com/latissimus+dorsi, last visited March 20, 2012.

[15] The teres minor is "a cylindric, elongated muscle of the shoulder."  It functions to rotate the arm laterally.  *teres minor*, The Free Dictionary, http://medical-dictionary. thefree dictionary.com/teres+minor, last visited March 20, 2012.

[16] Scapularis release refers to a procedure whereby the scapularis is severed from the tendons.  J.P. Cahuze, A Abid, and P Darodes, *Arthroscopic Capsular Release in Medial Contracture of the Shoulder Secondary to Ostetric Plexus Palsy,* Journal of Bone and Joint Surgery, available at http://proceedings.jbjs.org/cgi/content/abstract/87-B/SUP P_I/72, last visited March 20, 2012.  The subscapular muscle connects with the humerus and functions to rotate the arm medially.  *subscapularis*, The Free Dictionary, http://med ical-dictionary.thefreedictionary.com/subscapularis, last visited March 20, 2012.

exhibit shoulder weakness and limited motion in his right arm. Id. He also exhibited persistent weakness in elbow flexion and a wrist drop deformity.   Id.

On November 27, 2006, Occupational Therapists, Mrs. Henderson and Mrs. Britt, reported on Elijah's progress at school.   Tr. 344.   They indicated,

> Elijah has demonstrated significant progress in all of his previous areas of concern . . .   Elijah initially began kindergarten asking for the teacher's assistance in all self care activities such as taking on/off his coat, putting his backpack away, buttoning his pants, and zipping/snapping his coat.   Elijah has become more independent in these areas but occasionally requires assistance because of his strength in his right hand.   Elijah is a very cooperative and hard-working student and is performing to the best of his abilities for what he is capable of doing given his age and injury.

Id.

On February 21, 2007, Elijah's kindergarten teacher, Mrs. McGuire, filled out a questionnaire for Disability Determination Services.   In a category labeled "Moving About and Manipulating Objects," Mrs. McGuire indicated Elijah had a serious problem moving and manipulating things and an obvious problem demonstrating strength, coordination, and dexterity in activities or tasks.   Tr. 330.   She concluded,

> Elijah's right arm is paralyzed so he does
> encounter problems doing many daily
> activities.  He tries to do his best, but
> by the end of the day he is quite fatigued
> from using his left arm for so many tasks.

Id.

In a category labeled "Caring for Himself or Herself," Mrs. McGuire indicated Elijah had an obvious problem caring for his physical needs on an hourly basis, an obvious problem using appropriate coping skills to meet daily demands of the school environment, and a slight problem knowing when to ask for help on a daily basis.  Tr. 331.  She concluded,

> Elijah tries to take care of the daily
> self-help and his physical needs.  He
> doesn't seem too concerned at this age
> about some physical needs that he can't do
> on his own - tying shoes, pulling up his
> pants.  Many times he will work at a task
> for a long time and then will either give
> up or eventually accomplish the task
> (putting sweatshirt on, changing from shoes
> to boots).

Id.

On October 11, 2007, Dr. Kranz of the Mayo Clinic issued Elijah a splint to help him steady his right wrist.  Tr. 408.

A reading test on January 14, 2008, indicated Elijah's comprehensive score was below his grade level.  Tr. 354. Another reading test a year later again indicated his comprehensive score was below his grade level, though not

alarmingly so.  Tr. 365.

On May 20, 2009, Dr. Shaughnessy of the Mayo Clinic listed several problems Elijah continued to suffer from despite his surgeries:  lack of elbow flexion beyond 90 degrees, lack of wrist extension, lack of forearm pronation,[17] and lack of shoulder forward flexion.  Tr. 400.  Additional notes indicate that he may be losing what little motion he gained from surgery when he was younger.  Tr. 401.  The notes continue to indicate that Elijah would need more surgery to prevent his arm from getting progressively worse and locking into position.  Tr. 402.

On June 2, 2009, Rochelle Dean, Elijah's mother, completed an interrogatory with Disability Determination Services.  Ms. Dean indicated Elijah, in addition to his problems with his right arm, suffered from a learning disability with "difficulty in reading and math."  Tr. 350. Elijah was then attending a reading program through the Area Education Association.  Tr. 352.  She also indicated that Elijah "can stand okay but he trips a lot when he walks as he loses balance."  Tr. 351.  When questioned as to Elijah's

---

[17] To pronate is to "turn or rotate (the hand or forearm) so that the palm faces down or back."  *Pronation*, The Free Dictionary, http://www.thefreedictionary.com/Pronation, last visited March 20, 2012.

ability to self-care, Ms. Dean indicated that he needed help applying toothpaste to his toothbrush, holding his toothbrush, and dressing himself.  Tr. 352.

At the ALJ hearing of August 11, 2009, Ms. Dean indicated Elijah can not lift his arm more than half way up his body and could not lift his wrist up and down.  Tr. 436.  While he does use his right arm in order to carry things, this is only accomplished by holding things between his arm and hip.  Id. Ms. Dean also testified that Elijah is right handed and so he lacks dexterity in his one good hand.  Tr. 437.  This further complicates his schooling; specifically, his ability to write. Id.  He goes to summer school, attends "special reading classes and . . . [has] a tutor that . . . helps with math and writing."  Tr. 442.  He does ride a bike, but he can't stop the bike without the use of his feet because the break is on the right handlebar.  Id.  He plays baseball by catching the ball, dropping his glove, and picking up and throwing the ball with his left hand but this is frustrating for him.  Tr. 438-39.  He can also use his right thumb while playing video games.  Tr. 445.  He continues to wear a brace and is able to carry his books and lunch tray at school, though he has difficulty with balance and sometimes complains that his arm

9

falls asleep.  Tr. 339 and 440.  He has difficulty buttoning things, can't tie his shoes, and can only put on a buttonless shirt with great frustration.  Despite his troubles, Ms. Dean indicated Elijah remains in good spirits and "is willing to try everything."  Tr. 441 and 445.

## III.  LAW AND ANALYSIS

In order for Elijah to qualify for SSI disability benefits, it must be demonstrated that he is disabled as defined in the Act.  Under the Act, a person is disabled if they are:

> unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of no less then twelve months.

42 U.S.C. § 1382c(a)(3)(A).

### A.  The ALJ's Decision

The Social Security Administration has developed a three-step sequential evaluation process for determining whether a child is disabled as defined in the Act:  (1) determination of whether the child is engaged in "substantial gainful activity," (2) determination of whether the child's impairment or combination of impairments are severe, and (3)

determination of whether the child's impairment or combination of impairments "meets, medically equals, or functionally equals" a listed impairment. 20 C.F.R. § 416.924(a).

At step one, if a child is engaged in substantial gainful activity, the child is not disabled. 20 C.F.R. § 416.924(b). The ALJ found Elijah had "not engaged in substantial gainful activity" since his mother applied for benefits on his behalf. Tr. 21.

At step two, if a child's impairment or combination of impairments only amounts to "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations," the child is not disabled. 20 C.F.R. § 416.924(c). The ALJ found that Elijah had "the following severe impairment: sequelae[18] from right brachial plexus injury, status post multiple surgeries." Tr. 21.

At step three, if a child's impairment or combination of impairments does not "meet, medically equal, or functionally equal" a listed impairment, the child is not disabled. 20 C.F.R. § 416.924(d). A listed impairment is an impairment considered to be severe enough to prevent a child from doing

---

[18] Sequela refers to "any abnormal bodily condition or disease related to or arising from a pre-existing disease." *sequela*, The Free Dictionary, http://www.thefreedictionary. com/sequelae, last visited March 20, 2012.

any gainful activity and is characterized by "impairments that cause marked and severe functional limitations." 20 C.F.R. § 416.925(a). Listed impairments are found at 20 C.F.R. Part. 404, Subpart P, Appendix 1. The ALJ found Elijah did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 21.

When determining whether a child's impairment or combination of impairments is functionally equivalent to a listed impairment, an ALJ must consider six domains of functionality: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) ability to care for oneself, and (6) health and physical well being. 20 C.F.R. § 416.926a(b)(1). Ultimately, a child's impairment or combination of impairments "must result in 'marked' limitations in two domains of [functionality] or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a).

The ALJ found Elijah did not have an impairment or combination of impairments that functionally equaled a listed impairment. Tr. 22. Specifically, the ALJ found Elijah had a less than marked limitation in acquiring and using information, a less than marked limitation in attending and

12

completing tasks, a less than marked limitation in interacting and relating with others, a marked limitation in moving about and manipulating objects, a less than marked limitation in his ability to care for himself, and a less than marked limitation in health and physical well-being.  Tr. 25-32.

## B.  Standard of Review

This Court's role in review of the ALJ's decision requires a determination of whether the decision of the ALJ is supported by substantial evidence on the record as a whole. See 42 U.S.C. § 405(g); Owen v. Astrue, 547 F. 3d 933, 935 (8th Cir. 2008).  Substantial evidence is less than a preponderance but enough that a reasonable mind might find it adequate to support the conclusion in question.  Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008) (citing Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007)).  This Court must consider both evidence that supports and detracts from the ALJ's decision.  Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006) (citing Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)).  In applying this standard, this Court will not reverse the ALJ, even if it would have reached a contrary decision, as long as substantial evidence supports the ALJ's decision.  Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th

Cir. 2004).  The ALJ's decision shall be reversed only if it is outside the reasonable "zone of choice."  <u>Hacker v. Barnhart</u>, 459 F. 3d 934, 936 (8th Cir. 2006) (citing <u>Culbertson v. Shalala</u>, 30 F.3d 934, 939 (8th Cir. 1994)).

This Court may also ascertain whether the ALJ's decision is based in legal error.  <u>Laurer v. Apfel</u>, 245 F.3d 700, 702 (8th Cir. 2001).  If the ALJ applies an improper legal standard, it is within this Court's discretion to reverse his decision.  <u>Neal v. Barnhart</u>, 405 F.3d 685, 688 (8th Cir. 2005); 42 U.S.C. 405(g).

## 1.  Whether the ALJ Erred in Considering Elijah's Ability to Care for Himself

Plaintiff's sole argument and the sole issue on review is whether the ALJ erred in failing to find that Elijah had a marked limitation in his ability to care for himself.  Docket No. 11, at 4.  If Elijah has a marked limitation in his ability to care for himself, this, together with his marked limitation in moving about and manipulating objects, would render his impairment functionally equivalent to a listed impairment, and he would be entitled to SSI benefits.

Both the Commissioner and the ALJ maintain that the domain of caring for oneself solely relates to the child's

14

mental frame of mind; that is, if a child has the desire and drive to care for himself, he does not have severe or marked limitations. This Court disagrees. The ability to care for oneself logically involves both a child's frame of mind and his actual, physical capabilities.

The regulations provide that the ability to care for oneself refers to how well a child maintains "a healthy emotional and physical state, including how well" he gets his "physical and emotional wants and needs met in appropriate ways;" how he copes "with stress and changes in [his] environment; and whether" he actually takes "care of [his] health, possessions, and living area." 20 C.F.R. § 416.926a(k). Among other things, it involves an ability to respond to change, a sense of independence and competence to meet ones "physical needs, such as feeding, dressing, toileting, and bathing, appropriately for [one's] age;" it also indicates a child is developing appropriate confidence in his abilities and skills and displays consistent judgment, and a basic understanding of his body. 20 C.F.R. § 416.926a(k)(1).

While the regulations certainly emphasize that a child's emotional health relates to his ability to care for himself,

this does not eliminate the common sense implication that it also involves a child's actual physical capabilities.  "A single impairment . . . may result in limitations that require evaluation in more than one domain." SSR 09-1P, 3.  The act of tying one's shoes typically involves both the domain of moving about and manipulating objects and the domain of caring for oneself.  SSR 09-1P, 4.  In addition, as an example of children with limited functioning in the domain of caring for oneself, the regulations repeatedly identify children that cannot dress or bathe themselves appropriately for their age. 20 C.F.R. § 416.926a(k)(3)(iii) and 20 C.F.R. § 416.926a(k)(2)(iv) (dealing with children the age of Elijah).

Furthermore, in order to determine whether a child's limitations are functionally equivalent to a listed impairment, the SSA has crafted the "whole child approach." SSR 09-1P.  Under the whole child approach, an ALJ must identify limits on a child's activity, view those limits in the context of the domains involved in performing it, and then determine the severity of those limitations on activity within each domain to which they apply.  SSR 09-1P, 1-2.  In aid of this process, the ALJ should keep the following questions in mind: (1) What activities is the child able to perform?  (2)

16

What activities is the child unable to perform?  (3) Where does the child have difficulty with his activities - at home, in childcare, at school, or in the community?  (4) Does the child have any difficulty independently initiating, sustaining or completing activities?  (5) What kind of help does the child need to do his activities, how much help does he need, and how often does he need it?  20 C.F.R. § 416.926a(b)(2). Clearly, under the whole child approach, a child's actual, physical abilities is significant as to the activities carried out under each domain.  While emotional maladjustment is a factor in determining whether a child can care for himself, when, where, and if a child can perform the actual activities of caring for himself is also, obviously, significant.

The ALJ's failure to properly consider Elijah's actual, undisputed, physical limitations in relation to his ability to care for himself resulted in clear error, but the question remains:  should this Court remand Elijah's case for further proceedings to determine whether Elijah's limitations are marked, or should this Court simply remand Elijah's case for the calculation of benefits?  The Eighth Circuit has held that a remand for award of benefits is appropriate only where "the record 'overwhelmingly supports'" a finding of disability.

17

Buckner v. Apfel, 213 F.3d 1006, 1011 (8th Cir. 2000) (citing Thompson v. Sullivan, 957 F.2d 611, 614 (8th Cir. 1992). However, "[w]here . . . a rehearing would simply delay receipt of benefits," remand solely for the calculation of benefits is appropriate.  Tennant v. Schweiker, 682 F.2d 707, 710 (8th Cir. 1982).

A decision as to whether a limitation is marked or extreme must consider all of a child's "impairments, including their interactive and cumulative effects" as compared with typical children of the same age.   20 C.F.R. § 416.926a(e)(1)(I) and (f)(1). A "marked" limitation indicates that a child's impairments seriously interfere with his "ability to independently initiate sustain, or complete activities." 20 C.F.R. § 416.926(e)(2).

The Commissioner's brief argues that Elijah's school reports indicate his actual limitations in his ability to care for himself were not marked. Docket No. 12, 12.  Two school therapists indicated that Elijah "demonstrated significant progress" in his ability to function in the classroom, though he still required some assistance. Tr. 344. Elijah's kindergarten teacher also indicated that he had only an

"obvious"[19] problem in caring for his physical needs and using appropriate coping skills to meet daily demands of the school environment.  Docket No. 12, 12; Tr. 331.

While "progress" is certainly a good sign, it is, of course, relative to the individual child's starting point; and a child's limitations may still be marked for any given domain despite progress.  In addition, a child's ability to care for himself in the classroom is not the same as a child's overall ability to care for himself, which naturally involves activities, such as bathing and dressing, that occur at home. Furthermore, opinions from teachers, though they are entitled to some weight, are not dispositive.  Teachers lack familiarity with the rules, regulations, and terms of art specific to disability determinations.  Finally, the opinions of teachers are not entitled to the same wight given to medically proven limitations on relevant activity.

Neither the ALJ, the Commissioner, nor the Plaintiff seem to disagree about the limitations on Elijah's activities or the scope of those limitations.  As previously mentioned,

---

[19] While an indication that a child has an "obvious" problem may sound severe, on the form the teacher filled out "obvious" indicates a less severe problem than an available box indicating Elijah's problem was actually "severe," which the teacher passed up.  Tr. 331.

Elijah's right arm is nearly completely paralyzed, and this affects his ability to care for himself in numerous respects. He has difficulty tying shoes, buttoning shirts, and operating zippers, without assistance.  He also has difficulty brushing his teeth and doing basic chores.  In general, Elijah is unable to do almost all activities which require the use of two hands and has not yet developed the techniques that older persons may develop to cope with similar limitations. Finally, his problems are compounded by the fact that his paralyzed arm, is his dominant arm.

**IV.   CONCLUSION**

The undisputed fact is that Elijah cannot perform basic activities of self-care that other children his age can, and therefore, the overwhelming weight of the evidence supports the conclusion that Elijah's ability to self-care is markedly limited.

**Therefore, the decision of the Commissioner is reversed and remanded solely for the calculation of benefits.** Application for attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA), must be filed within thirty (30) days of the entry of final judgment in this action.  Thus, unless this decision is appealed, if Dean's

20

attorney wishes to apply for EAJA fees, then he must do so within thirty (30) days of the entry of the final judgment in this case.

**IT IS SO ORDERED** this 21st day of March, 2012.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa